FULLER *v.* FULLER.

720

No. 14849.   June 7, 1944.

722

*Gilbert E. Johnson* and *Perry Brannen,* for plaintiff.

*Aaron Kravitch,* for defendant.

GRICE, Justice. ■ The ruling in the first headnote, read in connection with the statement of facts, need not, we apprehend, be discussed.

■ It has a number of times been decided by this court that a decree of divorce, in which the custody of a minor child is awarded to one of the parties, is conclusive as between the parties to such decree as to the right of that parent to the custody of the child, unless a change of circumstances affecting the interest and welfare of the child is shown. *Sells* v. *Sells,* 172 *Ga.* 911 (159 S. E. 237) ; *Brooks* v. *Thomas,* 193 *Ga.* 696 (19 S. E. 2d, 497), and the prior rulings there cited. It would seem to logically follow

that if a petition in such a case is filed, seeking such change of custody, but without alleging a change of circumstances affecting the welfare of the child, an oral motion to dismiss the same should be sustained, since all defects which appear on the face of the pleadings may be taken advantage of by the motion (Code, § 81-302), and an oral motion to dismiss is in the nature of a general demurrer. *Weathers* v. *McFarland,* 97 *Ga.* 266 (22 S. E. 988); *Brown* v. *Georgia, Carolina &c. Ry. Co.,* 119 *Ga.* 88 (46 S. E. 71); *Rountree* v. *Finch,* 120 *Ga.* 743 (48 S. E. 132); *Dingfelder* v. *Georgia Peach Growers Exchange,* 184 *Ga.* 569 (192 S. E. 188). In a suit by the father against the mother to recover custody of a child awarded to the mother in a decree of divorce, it was held that the petition was properly dismissed on general demurrer, when it did not show such a change in conditions affecting the welfare of the child as would authorize the opening or modification of that judgment. *Shields* v. *Bodenhamer,* 180 *Ga.* 122 (178 S. E. 294). In the case cited, as in this case, a change in the condition of the father was shown, the children had grown older, and the father was now able to maintain a home in which the children could and would receive proper treatment; but it was held that none of these facts were sufficient to withstand a general demurrer. The petition in the instant case is likewise fatally defective for the same reason, and the trial judge erred in not sustaining the motion to dismiss, and in entering the final order shown in the preceding statement, on the ground that the same was contrary to law and was not justified by the pleadings in the case.

The inclusion in the original decree of the words, "subject to the further order of this court," does not make the authorities heretofore referred to inapplicable. *Coffee* v. *Coffee,* 101 *Ga.* 787 (28 S. E. 977), *Wilkins* v. *Wilkins,* 146 *Ga.* 382 (91 S. E. 415), and *Torras* v. *McDonald,* 196 *Ga.* 347 (26 S. E. 2d, 598), each dealt with a decree fixing the amount of permanent alimony. The intimation in the first two of these last three cases, that the judge might have authority to modify it if the power so to do was reserved in the decree, was, by a unanimous bench in *Gilbert* v. *Gilbert* 151 *Ga.* 520, declared to be obiter, there being no such power reserved in either of the decrees there involved. The same is true as to *Torras* v. *McDonald,* supra. In *Willingham* v. *Willingham,* 192 *Ga.* 405 (15 S. E. 2d, 514), the decree contained a similar clause, to

wit, "until further ordered." This court held that it was "a permanent adjustment of the custody of the children upon the facts as they existed at the time it was entered. The clause 'until further ordered' did not deprive the order of its finality. See *Scott* v. *Scott*, 154 *Ga.* 659 (2) (115 S. E. 2)."

There is another line of reasoning, not antagonistic to anything above presented, which if followed would lead to the same result, and that is this: *Carpenter* v. *State*, 195 *Ga.* 434 (24 S. E. 2d, 404), was an instance where it was sought to permit the reopening of a building closed by a decree as a nuisance under the Code, § 72-309. The decree declared, not that the premises should be kept closed for any definite period, but merely that they should be closed, and not opened "pending the further order of the court." We quote from the opinion in that case as follows: "It is insisted that the judge thus reserved discretion 'to reopen said houses at any time,' and that he should therefore have considered the petition as an appeal to his discretion instead of dismissing it for insufficiency as a matter of law. As may be noticed, the petition did not seek a modification on the ground that the abatement as adjudged was not limited to one year; but in this respect it was addressed solely to discretion of the trial judge as to whether he would modify the order at this time on the facts appearing, the period of one year not having expired. The petition did not show any cause for relief, even on this theory. If the judge had a discretion, under either the statute or the judgment, to allow the building or buildings reopened within less than one year on petition of the defendant, it was not an arbitrary discretion; and before he could properly exercise any discretion in such matter, some new fact or condition materially affecting the public interest should be introduced." So here it could be said that in no event did the inclusion in the decree of the words, "subject to the further order of the court," give to the judge any arbitrary discretion; and that, before he could exercise it, some new fact or condition materially affecting the welfare of the children should be shown.

The modification of the original decree in the instant case, both as sought in the petition and as granted by the judge, was one that affected the mother's right to the custody of the children, because the petition sought and the order entered thereon granted to the father for a part of the time the exclusive custody of the chil-

·dren. Therefore the case does not present the question as to the right of the father to visit his children at a particular time and place, even though the court had the authority to grant him such right, although such privilege was not awarded him in the original decree. As to the propriety of securing to one parent this right when the custody of the child is awarded to the other, see the con-·cluding portion of the opinion in· *Scott* v. *Scott,* supra.

Although the petition alleges in substance that the mother has poisoned the minds of the children against the father, there is no allegation that the mother acted any differently before and at the time of the rendition of the original decree. If a change of con-dition of this nature had been shown, then the question would have been presented whether a court would have been authorized to modify the decree in the particulars sought, on the ground that such a change was one that materially affected the interest and welfare of the children. It could be forcibly urged that for an-·other to implant in the mind of an immature child the idea that he must not love his father, that the latter is unworthy of such affection, is a matter of serious import, the tendency of which would be to deprive a child of that affection, confidence in, and respect which he should have for his father; and to deprive such child, particularly a male child, of the hope that at sometime or other he might have the companionship of his father, and the latter's guiding hand. In God's economy a child has to have a father, and this is not merely that there be some one to provide the former with food, raiment, and shelter. There are certain intangible benefits besides these which every normal· child is entitled to re-·ceive from his father, growing out of the relationship, which can not be furnished when the child is poisoned against the parent. These intangibles spring from affection, mutual affection, and have no existence when the child is made to believe that his father is unworthy of his love. Is it to the interest and welfare of the child that he should grow up under the belief that, unlike most other children, his own father if appealed to, could not be trusted to sug-gest, advise, and admonish him in the light of his own knowledge and experience? That his own father was unworthy of his love and confidence, or even his respect? Would not the implanting of such a view ordinarily have·a tendency to cause a child embarrassment and tend to cause him to develop abnormally?

We have thrown out these suggestions with a view of calling attention to the fact that in reversing the judgment we are adjudicating merely that it is not made to appear that there was any change of condition. We do not have for decision the question whether or not the facts as pleaded show a condition materially affecting the interest and welfare of the children.

*Judgment reversed. All the Justices concur.*